ELIJAH HEATH, Plaintiff in error, and below, *v.* JOSHUA KNAP et al., Defendant in error, and below.

1. To an ejectment brought in the name of the owner of the legal title, it is no defence to show an equitable title in another.
2. A stranger, who discovers an unsatisfied warrant in the hands of the deputy surveyor or elsewhere, cannot, after any lapse of time from its date, assume the ownership of it, and have it surveyed for himself.   A survey so made will inure to the benefit of the owner of the warrant.

ERROR to the Common Pleas of Jefferson county.

This was an action of ejectment for sixteen hundred acres of land, which was tried 16th September, 1841.   The evidence in the court below was as follows :

For the plaintiff :

5th March, 1793, warrant to Robert Morris for one thousand acres in the new purchase, No. 3741, £5 per hundred acres.

26th August, 1820, survey for Hugh Brady, in right of Robert Morris, one thousand and thirty-four acres ninety-six perches.   Accepted 20th February, 1821.   October 7th, 1826, board of property decided in favour of Charles Sutherland for four hundred acres of this tract.

5th March, 1793, warrant to Robert Morris for one thousand acres, new purchase, No. 3701.

26th August, 1820, survey, one thousand and twenty-five acres one hundred and twelve perches, to A. W. Foster in right of Robert Morris ; accepted the 30th January, 1822.

13th June, 1804, will of Robert Morris devising the residue, after specified legacies, to his wife Mary Morris ; proved 21st March, 1806, Mary Morris sole executrix.

24th October, 1824, will of Mary Morris, devising her property to Maria Nixon ; proved the 8th July, 1827.

23d January, 1839, deed of Henry Nixon and wife, to E. Heath, the plaintiff.

Record of a commission of bankruptcy in the matter of Robert

Morris, 28th July, 1801; commission to Joseph Hopkinson and others.

8th December, 1801, deed from commissioners to John S. Smith, John Craig, and Nathan Fields, trustees.

17th September, 1830, proceedings and decree vacating the commission of bankruptcy.

Writ of ejectment read.

For the defendants:

The defendants offered in evidence a copy of the revival of a judgment in the Supreme Court of Pennsylvania, wherein Samuel Coats was plaintiff, and Thomas Ruston, Robert Morris, and John Nicholson were defendants, with a testatum fi. fa. regularly issued on said judgment, to the sheriff of Northumberland county, No. 25, September term, 1802.

Also, a copy of the original warrant for the lands in dispute, with an endorsement thereon in these words :—

" By virtue of a writ of testatum fi. fa. to me directed, from the Supreme Court of Pennsylvania, I levied on this warrant as the property of Robert Morris, at the suit of Samuel Coats, and after giving due notice of the time of sale, sold it to Thomas Grant for the sum of $7 41.

HENRY VANDERSLICE, Sheriff."

To be followed by regular transfers of said warrant to the present defendants ; and that the defendants, and those under whom they claim, have had the possession of said warrants ever since ; that those under whom the defendants claim, had the surveys on said warrants made for their own use and benefit, and paid the expense thereof, and took possession of one of the tracts eighteen years ago ; and of the other some years since, and made valuable improvements thereon, and that the taxes thereon have been assessed to them since. For the purpose of showing that the defendants, and those under whom they claim, did not locate the warrants as the agents and for the use of Robert Morris, his heirs or devisees, but for their own use, and for the purpose of raising the presumption of an abandonment of said warrant by Robert Morris, his heirs and devisees. To this offer, the plaintiff objected, and the court admitting the evidence, the plaintiff excepted, &c.

1797. Judgment in S. C. Penna. Debt $2519 79 and costs.

1802. Test. fi. fa. to Northumberland, No. 25, September term. No return.

5th March, 1793, warrant to Robert Morris for one thousand acres, No. 3741, and endorsement thereon as contained in defendants' offer.

Same date, warrant to Robert Morris for one thousand acres, No. 3701, and endorsement thereon as contained in defendants' offer.

No. 3701, directed to William P. Brady.

No. 3741, directed to John Adlum, certified to Brady.

12th June, 1815, will of Thomas Grant, proved 22d June, 1815. Appoints his wife Debora Grant, George Grant, and William Grant his executors.

July, 1818, deed from Thomas Grant's executors, to William P. Brady, for warrant No. 3701. No consideration.

July, 1818, deed from the same, to the same, for No. 3741. No consideration.

William P. Brady.—I made the survey on No. 3701, was not authorized by any public officer to make it; I made the survey for myself; I was the owner of the warrant at the time; Mr. Taylor would not return the survey until he had examined the survey, to know whether it was right. I had parted with the warrants in the mean time. I took Mr. Taylor on the land, and showed him two lines; it rained hard, and I went to my lodgings. He had my drafts and field notes; I made the first examination between 1816 and 1820; about 1816 I run the whole of the lines; I owned the warrant at the time.

7th April, 1819, exemplification of a deed, William P. Brady to A. W. Foster, for warrant No. 3701, from the recorder's office of Indiana county.

31st March, 1821, receipt of A. Taylor for executing two warrants, granted to R. Morris $15.

16th September, 1823, State Treasurer's receipt $11 83, balance of purchase money, and $10 patent fees.

16th September, 1823, patent to Alexander W. Foster, Jun., No. 3701, one thousand and twenty-five acres, one hundred and twelve perches.

3d May, 1832, deed A. W. Foster to Alexander Smith, Moses, John and Samuel Knap, for No. 3701.

12th October, 1819, deed William P. Brady to Hugh Brady, for No. 3741.

7th September, 1836, article of agreement between Hugh Brady and Samuel and Joshua Knap.

The defendants then proved the payment of the surveying fees on the warrant by William P. Brady, and the return of the surveys. Several witnesses were called, who testified as to the valuable improvements made on the lands in controversy. The defendant then offered to prove that the warrants No. 3701, and 3741, together with many others in the name of John Nicholson and Robert Morris, were placed in the hands of William P. Brady, Esq., at that time deputy surveyor of district No. 5, by a certain Thomas Grant, who alleged

that he was acting as agent for the owners of said warrants, and also as part owner of the same warrants. That Robert Morris, in his statement on oath before the commissioners of bankruptcy, declared that he had transferred and sold his interest in these lands to John Nicholson, who, in 1797, conveyed the same to the Pennsylvania Population Company; that in 1802, Thomas Grant, the person who put said warrants in the hands of Mr. Brady for execution, came to the house of said William P. Brady in company with Henry Vanderslice, at that time sheriff of Northumberland county; and that the said Thomas Grant delivered the said warrants to the said sheriff for sale.

To this offer the plaintiff objected, and the court, admitting the evidence, plaintiff excepted, &c.

William P. Brady.—Thomas Grant, on the 16th day of March, 1793, gave me the warrants Nos. 3701, and 3741, received on the 5th March, 1793. On the 16th of March I received from Grant a number of warrants, in the name of John Nicholson and Robert Morris. All the warrants I received from John Nicholson and Robert Morris; but fifteen were handed me by John Musser; afterwards, the same summer, Thomas Grant said he was the agent for them; I understood him and Thomas Grant were to have the one-fourth for laying them; I executed a number of them; Grant found hands, pack-horses and provision; and after I surveyed them, I returned them; all the surveying fees I received on the Morris and Nicholson warrants, I received from Nicholson; never received any fees from Morris; I did not execute them all at that time. In 1796, I went back to Philadelphia; made out returns for all but five or six; them I laid; Kinsua, Grant, Nicholson, or some of them, accepted the returns and paid the fees. Warrants, returns, &c., lay in my hands until Grant called with the sheriff to levy on them; Grant handed them to the sheriff, Henry Vanderslice; he sold them at the public house of Adam Hocks, near Northumberland. I was present when Nicholson and Grant divided the lands I had returned and accepted; they drew lots; Musser's and Grant's fifteen lay north of Toby's creek; the balance fell back to Nicholson, or who ever was the owner; they divided them in Nicholson's office; got me to arrange the lands that were returned. These were the last of warrants left in my hands by Grant, and the fifteen by Musser. The division was made in 1794, or 1795; I never spoke to Morris about lands in my life, or he to me, except to acknowledge some deed before me. He never paid me any surveying fees for making surveys.

After sale of the warrants, they were kept by the sheriff until paid for. Not long after the sale, they came back to me. I bought some

2 s 2

of them; I kept them until I sold them to Foster and Hugh Brady. I had them in my hands before I got the conveyance from Grant's executors; took them with me from this county; I got the conveyance; I went out of the deputy's office in 1798, in district No. 5; I was deputy in Northumberland county in 1802; after the sheriff's sale I got the warrants from Grant.

Certified copy of statements made on oath by Robert Morris to the commissioners of bankruptcy; and tax duplicates, showing the assessment of these lands to defendant, &c.

The evidence being closed on both sides, the plaintiff requested the court to charge the jury:

1. That the plaintiff has shown a good and legal title to the warrant and survey on the land in controversy.

2. That at the time these warrants were surveyed, they were the property of Mary Morris, the devisee of Robert Morris; and that the survey made in pursuance thereof inured to her benefit, and the said survey vested the seisin of the land in her and her devisee, Maria Nixon; and the deed from Henry Nixon and Maria his wife to plaintiff, gave him the legal right to the land in controversy.

3. There was no abandonment of these warrants, inasmuch as they remained in the hands of William P. Brady, where they were directed for execution until they were surveyed on the land in controversy.

4. That the adverse claim of Grant and Brady to these warrants, if the jury believe they are adverse, against the right of Robert Morris and his devisee, could give no right in equity, unless they were purchased on the faith of an express disclaimer by Robert Morris, of which there is no evidence in the case.

5. That the bankruptcy of Robert Morris rebuts all presumption of abandonment or sale, until the commission of bankruptcy was vacated.

6. That the defendants, not having had the actual possession for twenty-one years, have no right against the warrant and survey of the plaintiff.

7. That if the jury should believe that Robert Morris held these warrants in trust for himself and Nicholson, Grant, and Musser; yet the legal title would pass to the plaintiff, upon which he would be entitled to recover against the defendants.

And the defendant requested the court to charge the jury:

1. The court are requested to instruct the jury, that the holder of an indescriptive warrant is bound to use due diligence in having a survey made thereon and returned; and a neglect to have a survey made and returned for a period of twenty-one years is an abandonment of the right under the warrant.

2. That making an application to the land-office, and having an indescriptive warrant issued, vests no title in the holders, until they procure a survey in pursuance of the same; and that a survey made on such warrant at the instance of third persons, without the direction and authority of the original holder, or his heirs or assigns, vests no title in them.

3. That the warrant under which the plaintiffs claim being indescriptive, and no survey having been made or returned for a period of twenty-one years, either by the holder or any person claiming under him, is in law an abandonment.

4. That a survey made on the warrant after this period, at the instance and at the expense of a third person for himself, not claiming in any way under the warrant, but adverse to him and his heirs, which has been returned in his name, and accepted in the land-office, and a patent issued thereon to him, vests, in the person who procured the survey and patent, a good title against the warrantee and all claiming under him.

5. That a survey made on an indescriptive warrant by a third person, adverse to the warrantee and without any arrangement, agreement or privity between him and the warrantee for that purpose, but in his own name and at his own expense, does not make him a trustee for the warrant holder.

6. That if the jury believe that the survey in this case was not made by Robert Morris, or any person claiming under him, but by A. W. Foster, Esq., and Hugh Brady, who paid the surveying fees, and procured the survey and return to be made for themselves, claiming adversely to Robert Morris and his heirs, or without any privity between them and R. Morris, or any person claiming under them, that it vests in A. W. Foster, Esq., and Hugh Brady, and those claiming under them, a good title, and that the plaintiff is not entitled to recover.

7. That procuring a survey to be made, and having the same returned, paying the expenses of the survey, making valuable improvements upon the land, and the payment of the taxes for a period of ten or fifteen years, raises the presumption of the transfer of the legal title, and vests in the occupant such title as will protect him in the possession.

8. That if the jury believe, that the lands or warrants in dispute form part of the lands and rights to lands which Robert Morris declared on his oath, as transferred to Nicholson, the plaintiff cannot recover in the present suit.

9. That the present defendant, by purchase of the legal title of tract No. 3701, will be protected from the claims of the assignee of the

original warrantee, who has taken no steps to perfect his inceptive title for a period of upwards of thirty years.

The court below (McCalmont, President) charged the jury as follows:

"This is an action of ejectment for two tracts of land, surveyed on warrants granted to Robert Morris, Nos. 3741 and 3701, dated 5th March, 1793, for 1000 acres each, in the new purchase, on which surveys were made on the 26th August, 1820. No. 3701, was surveyed for Alex. W. Foster, in right of R. Morris; and 3741, for Hugh Brady, in right of R. Morris. These surveys were returned and accepted, the first on the 3d July, 1822, and the other on the 20th of February, 1820, or 1821. These warrants, surveys, and returns have been given in evidence by the plaintiff, with the will of R. Morris and Mary Morris his wife, and a deed from Henry Nixon and Maria his wife, to E. Heath, the plaintiff for the lands in controversy. It is contended by the plaintiff that all acts done in pursuance of these warrants will be presumed to have been done for the warrantee, and will inure to the benefit of him and his devisees. In the absence of all evidence to rebut this presumption, it is so to be presumed; and the plaintiff has made out his case, and shown a good legal title. The defendant, however, has given evidence, which, if believed, prove that those warrants, not long after they were issued in the name of Robert Morris, and in the name of John Nicholson, were placed in the hands of the deputy surveyor by Thomas Grant, who stated that he was agent for the owners, and had the direction or care of the location; part of the warrants under his care were located, and subsequently drawn between Morris and Nicholson, Grant and Nixon. The returns on the warrant in controversy and some of the others were not satisfactory, and still remained in the hands of the surveyor, Wm. P. Brady. In the month of August, 1802, they were taken out of his hands by Thomas Grant, and by him delivered to the sheriff of Northumberland county, by whom they were sold, as the property of Robert Morris and John Nicholson, to Thomas Grant, on the 30th of August, 1802, who subsequently placed them in the hands of Wm. P. Brady as his own property. The executors of Thos. Grant, in July, 1818, conveyed to Wm. P. Brady these warrants, by whom they were some time before located on the land in controversy; and the lines by which the land is claimed were marked on the ground. At the time he made the survey, he was not the deputy surveyor, nor had he any authority from him. The surveys were, however, afterwards examined and approved by the deputy surveyor, Mr. Taylor, and by him returned as surveyed, on the 26th of August, 1820. The surveying fees, and all expenses for making the surveys, were paid, or

borne by or for the parties for whom the surveys were made, to wit, Hugh Brady and Alexander W. Foster; and a patent from the Commonwealth, for No. 3701, granted to Alexander W. Foster on the 16th of April, 1823, who paid the patent fees, the purchase, and the interest for the surplus land over one thousand acres included in the survey. Hugh Brady conveyed to the present defendants, by a deed or assignment in writing, dated the 7th of April, 1834; Alexander W. Foster, by a deed dated the 3d of May, 1832. It is not pretended that they had any right to levy or sell those warrants; the sale was void, and gave no title, but the defendants were permitted to prove the sale and subsequent possession and location of the warrants, to show that from the 30th of August, 1802, they were claimed adversely to Robert Morris and his devisees for a period of almost thirty-seven years. We have no evidence that R. Morris, his devisees, or any person for them, have taken any steps to perfect a title in any land in pursuance of these warrants, except the declarations of Thomas Grant in 1793, when he placed the warrants in the hands of the deputy surveyor. Those declarations prove the warrants in question belonged to Morris and Nicholson. If so, the oath of Robert Morris is conclusive, that he had no interest in them at the time the commission of bankruptcy issued. If you believe that the defendants, and those under whom they claim, have had the possession of those warrants, and have been exercising acts of ownership over them, such as procuring the survey, return and acceptance, paying the fees, expenses, &c., adverse to the claim of R. Morris and his devisee, and not for them, you may and ought to presume a release or abandonment in favour of the defendants, even if the warrants were not held in partnership.

" We will read the points on which we are requested to charge you by the counsel, and answer more particularly. The plaintiff's first point is answered in the affirmative; but if you believe the defendants have had possession of the warrant, and claim the same title adversely upwards of thirty-six years; and that during all this time the plaintiff, and those under whom he claims, had not taken any steps to perfect his title, although given in evidence by the plaintiff, they are defendants' title, and not plaintiff's. Plaintiff's 2d and 3d points are answered in the negative. If the owner of the warrant placed it in the hands of the surveyor, and proceeded no further, and it is claimed by another who procured a survey, and perfects his title after twenty-one years, an abandonment would be presumed, unless that presumption was rebutted by facts.

" Plaintiff's 4th point is answered in the affirmative, but after twenty-one years, an abandonment would be presumed.

Vol. I.—62

" Plaintiff's 5th point is answered in the negative—we have not been referred to any authority—we are not aware, however, that a commission of bankruptcy would suspend the operation of the statute of limitation, and if not, it will not rebut the presumption in this case.

" Plaintiff's 6th point assumes the warrant to have been the plaintiff's when the survey was made, and the survey to have been made for him. If this was the fact, defendants, not having had actual possession of the land twenty-one years, would have no title. The defendants, if we understand the case, claim adversely the warrant and survey, and land by virtue thereof.

" Plaintiff's 7th point is answered in the affirmative, providing the legal title still remained in Robert Morris, and was not conveyed, released or abandoned.

" Defendants' points read. The 1st, 2d, and 3d put by defendants' counsel and answered in the negative. The 4th, 5th, 6th, 8th, and 9th are answered in the affirmative. The 7th point is answered in the negative. A shorter period than twenty-one years would not raise the presumption of the transfer of the legal title, the rational ground of presumption is the abandonment, and this will not be presumed under twenty-one years."

To this charge both plaintiff and defendants excepted.

Verdict for the defendants.

In this court the plaintiff in error made the following assignment of errors:

1. The court erred in admitting the evidence in the first written proposition.

2. In admitting the exemplification of the deed from Wm. P. Brady to A. W. Foster.

3. In admitting the evidence of Wm. P. Brady, that he had run the lines of the survey before the deputy made, and without his authority.

4. In admitting in evidence the second written proposition of defendant.

5. In admitting the certified copy from the secretary of the Commonwealth, of extracts from the statement of Robert Morris to the commissioner of bankruptcy.

6. In charging the jury, if they believe that the defendants, and those under whom they claim, have had the possession of those warrants, have been exercising acts of ownership over them, such as procuring a survey, return, and acceptance, paying the fees, expenses, &c., adverse to the claim of Robert Morris and his devisees, and not for them, they might and ought to presume a release or abandonment in the favour of defendants.

7. They erred in their charge on the first, second, third, fourth, fifth, and sixth points of the plaintiff.

General errors.

*Buffington* and *Jenks*, for plaintiff in error.

Robert Morris was the original owner of the legal title to the warrant.

The warrant would not lose its vitality by delay on the part of the owners to locate it, but would only be postponed to the claims of those who may have made a prior appropriation of the lands. 5 Watts, 173; 4 Watts & Serg. 296.

The owner of the legal title may recover and hold possession against the whole world, except only his cestui que trust. 3 Penna. Rep. 427; 2 Coke, 114. The answers of Mr. Morris prove nothing material to the issue. 11 Serg. & Rawle, 352; 4 Bin. 198. Defendants setting up a claim under Mr. Morris, they cannot be permitted to controvert his title. 2 Serg. & Rawle, 44; 5 Watts, 384. Defendants acquired no title to the warrant by purchase. 10 Watts, 405. The facts in this case exclude every presumption of ouster and abandonment.

*Foster* and *Banks*, contrà, cited 2 Bin. 55; 1 Yeates, 164; 2 Yeates, 318; 17 S. & R. 350.

The opinion of the court was delivered by ROGERS, J.

The errors assigned, although numerous, have been much reduced in the argument, and may be included in the admission of the record of the bankruptcy of Robert Morris, and the charge of the court in relation thereto, and the charge as to the abandonment of title to the warrant by Robert Morris, under whom plaintiff claims. The use made of the admission of the record, as would seem from the charge of the court, was to show an equitable title in John Nicholson; but for this purpose was wholly immaterial, for, admitting that he had an equitable title, that is no defence. The suit is brought in the name of the person who owns the legal title, and, in Hart *v.* Cranford, 3 Penna. Rep. 426, it is ruled that a trustee of land may maintain ejectment for the recovery; and the wrongdoer cannot set up the title of the cestui que trust to defeat the recovery of the trustee. In this state, where we have no Court of Chancery, the cestui que trust may bring the action in his own name, or in the name of the trustee. It is not intimated by Robert Morris that he made a legal transfer of his interest in this warrant to John Nicholson. All he says is, The late John Nicholson and myself had purchased and acquired rights to large quantities of land, lying within the state of Pennsylvania, which are held jointly; but in March, 1794, I sold my half of all said lands to him, and he is charged on my books accordingly. The court say, We

have no evidence that R. Morris, his devisees, or any person for them, has taken any steps to perfect a title in any lands, in pursuance of these warrants, except the declaration of Thomas Grant, in 1793, when he placed the warrants in the hands of the deputy surveyor.    These declarations prove the warrants in question belonged to Morris and Nicholson.    If so, the oath of Robert Morris is conclusive, that he had no interest in them at the time of the commission of bankruptcy. Although the court do not say so in terms, it is clearly intimated to the jury, that if they believe John Nicholson was the owner of the warrant, the defendant was entitled to a verdict.    But the conclusion was a non-sequitur, as appears by the cases cited.    The record was not properly admitted, as bearing on the allegation of abandonment, for, if it proves any thing, it shows that there was no intention to abandon the interest in the warrant, particularly in favour of a third person.

The court charged the jury, that if they believed that the defendants, and those under whom they claimed, have had possession of the warrants, have been exercising act of ownership over them, such as procuring a survey, return and acceptance, paying the fees, expenses, &c., adverse to the claim of Robert Morris, and his devisees, and not for them, they might and ought to presume a release or abandonment in favour of the defendants.    At the time this case was tried, the Supreme Court had not decided Orr *v.* Cunningham, 4 Watts & Serg. 294, where the law, on facts nearly if not precisely the same as here, was ruled otherwise.    It is there held that a title may be lost by abandonment; and if so, it falls back to the state, but is never thereby transferred to an adverse claimant.    Nor can the stranger, who discovers another unsatisfied warrant in the hands of the deputy surveyor, or elsewhere, after any lapse of time from its date, assume the ownership of it, and have it surveyed for himself.

We think the court was wrong in qualifying their answer to the plaintiff's first point, and in the answer to the second point.    The court should have instructed the jury, that the plaintiff had shown a good and legal title to the warrant and survey; that at the time the warrants were surveyed, they were the property of Mary Morris, the devisee of Robert Morris, and that the survey made in pursuance thereof inured to her benefit.    It is true, that superintending a survey or paying the fees is sufficient evidence of ownership of the application or warrant upon which it is made, but it may be rebutted by evidence of ownership, in the person in whose name the application was entered, or the warrant was issued.    Time *v.* Waterson, 4 Watts & Serg. 171. Here the presumption of ownership in Brady is rebutted by the most overwhelming proof.

Judgment reversed, and a venire de novo awarded.