SHEARER *v.* WOODBURN.

A purchaser at sheriff's sale, under a judgment against one who had exercised acts of ownership, and been reputed to be the owner of the land for many years, has a title which will authorize him to redeem the land when sold for taxes.

Declarations by one reputed to be the owner of lands, that the title was in A., made to one who thereafter purchased A.'s title, will not estop a subsequent purchaser under a judgment recovered against such person, at or about the time of his making such declarations, from setting up his title against the purchaser from A.

Deeds under a tax-sale in 1810, are not evidence for the plaintiff as against defendant having possession under colour of title, unless there is proof that the requirements of the law were strictly complied with.

IN error from the Common Pleas of Perry.

Ejectment. The plaintiff showed title in Gardner, and offered in evidence a deed to Mateer, under a tax-sale in 1810, which was rejected for want of proof of compliance with the law. He also offered a conveyance from the heirs of Mateer to himself; its date was not given. He further proved a tax-sale to himself in 1846.

The defendant proved that for twenty-five years past the land had been reputed to be Harper's, who had exercised acts of ownership on it. In 1842, a judgment was recovered against him, and the land sold by the sheriff in 1844. The purchaser conveyed to defendant. In 1847, defendant paid the redemption-money on the tax-sale in 1846. The plaintiff then proved that about 1841 or 1842, he had applied to Harper to purchase the land, and he informed plaintiff that the title was in Mateer's heirs, and gave him " an extract from the prothonotary's docket" to enable him to write a deed. Plaintiff then sought to purchase their title, but they refused to sell. He afterwards obtained a deed from them. Plaintiff then again offered the deed from Mateer's heirs, and the deed under the tax-sale in 1810 to him, but the court rejected them.

HEPBURN, P. J., instructed the jury that the evidence did not

show any such arrangement by Harper, as would affect the defendant's title, and that he had such a title as authorized him to redeem the lands. The charge and the rejection of the evidence were assigned for error.

*Reed,* for plaintiff in error.—The acts of Harper estopped him from setting up such title as he had against the purchasers from Mateer's heirs: 4 W. & S. 323. And the purchaser under him acquired no better right: 2 R. 188. The treasurer's deed was therefore evidence, for the defendant was a mere intruder: 6 Barr, 212; 1 Ib. 501. Nor did the redemption enure to his benefit: 4 W. & S. 294.

*Graham,* contrà.—Defendant was not an intruder, but was in with colour of title: 4 Barr, 13; 3 W. 72. Hence he could redeem. And being so in possession, there was no such title shown as would suffice to dispossess him. The acts of Harper gave but an equity at best, of which the purchaser had no notice, and hence was not bound by it.

*June* 18.    BURNSIDE, J.—It has seldom fallen to our lot to consider two such shabby titles as this case presents.

The warrant and survey of Archibald Gardner (for the land in controversy) had been sold for taxes by Treasurer Boden, in January, 1810, to Andrew Mateer, who, for aught that appears, never looked after his purchase, and never paid any taxes during his life; nor did his heirs after him. These heirs of Mateer were hunted up by Shearer, in 1846, and their title purchased. But for a period of thirty-five years the purchase of Mateer was never inquired after. The reason is obvious. The sale of unseated land for taxes was made prior to 1815; and it is well known that a good title could not be established under the sales for taxes prior to the act of 1815. An exact and punctual adherence to the laws could alone divest the title on a sale for non-payment of taxes: 2 Yeates, 100, 312; 1 Wash. C. C. R. 333. In all these cases, and in many others, the purchaser was held to strict proof of everything directed by the letter of the law to be done. This was impracticable; and the title of the original owner irresistibly prevailed: 6 Barr, 211. In this case (Dikeman *v.* Parrish), it is shown that this rule was relaxed as against a mere intruder who was a trespasser, and entered without right. Against such a person the law would seem to have clothed a purchaser, where his abandonment was *not* obvious, with constructive possession.

Here the abandonment was beyond a period required by the statute of limitations; and there was no error in the court's rejecting this deed. The plaintiff, conscious that he could not make title and hold the land under the sale for taxes to Mateer in 1810, had it returned as unseated in 1843, 1844, and 1845, and had it again sold on the 8th June, 1846, by Hackett, the treasurer, when he purchased it for the sum of $5.75. The plaintiff then rested. The defendant then showed the treasurer's receipt for the redemption-money. It was contended that Woodburn had no right to redeem. It is true that in McBride v. Hoey, 2 W. 439, it was ruled that unseated land sold for taxes can only be redeemed by the true owner, or one authorized by him. There the person redeeming had no connexion with the land; was a stranger to the premises. It was held in Patterson v. Brindle, 9 W. 98, that a power to take care of land carries with it a power to pay the assessed taxes, or to redeem if it be sold as unseated by the treasurer. The law on this subject was more fully considered by the Chief Justice in Orr v. Cuningham, 4 W. & S. 294, where it was held that the act of Assembly declares that the right to redeem is in the owner, to guard the purchaser from the officiousness of strangers. The decisions have gone on the letter of the statute, that a tender by one who has not an interest in the land, may be rejected. Yet the law allows, and the case goes far to establish, that an antagonist claimant may redeem. The treasurer has no right to determine on the titles of the parties. The redemption is well put by the Chief Justice on the principle of a patent which will enure to him who has the right. The tender by either of the adverse claimants will enure to the true owner. No good reason can be given why the claimant under an imperfect title should not have the power to redeem, and let it enure to the true owner of the land. The redemption here avoided the treasurer's deed, and left the title of the parties as they respectively stood before the sale.

After this review of the plaintiff's title, it is almost superfluous to review the defendant's title, as it has long been settled that the plaintiff must recover on the strength of his own title, and not on the weakness of the defendant's: Addis. 390; 2 S. & R. 65; 3 Ib. 283.

The defendant claimed title under John Harper, whose acts of ownership were something like the defendant's fancy, viz., in hooking the timber and bark. But the defendant had this advantage: the title under which he claimed had paid the taxes for more than twenty-five years. The land was reputed to belong to Harper, and, in 1842, it was levied on as Harper's land, and regularly sold

by the sheriff of Perry county to Thomas Paxton, who afterwards conveyed to Woodburn, the defendant. The defendant fully proved his offer. But the plaintiff insists he has equity on his side, and to establish it, he proved by one McKeehan, that Shearer went to Harper in 1841 or 1842, and was told by Harper that the land belonged to Andrew Mateer's heirs; and thus he was induced to purchase. I agree that, if the defendant fraudulently induced the plaintiff to purchase a bad title, he cannot avail himself of the rule which requires the plaintiff to recover on the strength of his own title: 2 S. & R. 65. But the defendant gave the plaintiff no encouragement to purchase the Mateer title. The encouragement alleged was given by Harper, when the judgment was against him, and about the time of the sale, and no purchase was made until more than three years after the sale to Paxton, who sold to Woodburn. I am well satisfied the plaintiff has failed to make out a title to enable him to recover on every point; and that the other errors assigned raise no question which requires consideration.

Judgment affirmed.