## Ward, Hough & Bailey *versus* Patterson, surviving partner of I. & A. Patterson.

*Conditions precedent, performance of.*—*New trial granted on condition.*—*Duty of party for whom motion was made.*—*Mechanics' lien lost by failure to prosecute* sci. fa.

1. Conditions precedent must always be performed before a right dependent thereon can be enjoyed, and if no time be fixed and performance be wholly in the will of the grantee, the law gives a reasonable time within which to perform it. A party asking deliverance, at the discretion of the court, from an adverse verdict, must be prompt in the performance of every condition imposed.

2. Where a new trial was granted on motion of the plaintiff, on conditions precedent, and the plaintiff failed to comply with the conditions for eight or nine years, *Held*, that the delay was unreasonable and the right to new trial was lost.

3. The issuing of a *scire facias* within five years must, to preserve a mechanic's lien, be duly prosecuted; where, therefore, a *scire facias* was issued in 1851, tried and defeated in 1852, and new trial granted on conditions which were not performed until 1863, and the case then tried, the *scire facias* will not preserve the lien.

ERROR to the District Court of *Allegheny county*.

This was a *scire facias* on a mechanic's lien, to recover a balance alleged to be due to the plaintiff for furnishing materials, and erecting eighteen dwelling-houses in the city of Pittsburgh. It was first tried in January 1852, and a verdict rendered for the defendant. A motion was made for a new trial, which, on the 7th of July 1852, was granted, on the terms that the plaintiff was to file, within a reasonable time, a specification of the amount of his claim, and pay the costs. He filed, in a few days after his

[Ward v. Patterson.]

claim, substantially as directed by the court. On the 14th of July 1852, the defendant filed his bill of costs, which were taxed, paid to the prothonotary, and received by the defendants on the 11th day of June 1860. When the cause was called up, in January 1863, the defendant's counsel objected to the jury being sworn, because the plaintiff had not been more specific in his items of claim for extra work; he then filed, by leave of court, the items of that portion of his claim.

After the evidence was closed on both sides, the plaintiff, having failed to make proof of his statement for extra work, which he had claimed at the commencement, withdrew the same, with all the evidence he had given on the subject. Several points were presented by the parties, on which the court (HAMPTON, J.) charged, reserving for the consideration of the court in banc the questions raised by defendant's 2d, 3d, and 5th points.

The question raised by the 5th point of the defendant was, whether the plaintiff had complied with the terms upon which the new trial was granted, especially in the payment of the costs. The chief complaint was that the costs were not paid in time. The defendant's bill was filed shortly after the order, but amounting to more than $20, it could not be taxed by the prothonotary without notice to the other party, according to the provisions of one of the rules of this court. It was the duty of the defendant to have a time fixed for the prothonotary for the taxation, and to have notice thereof served on the plaintiff. This he failed to do until June 1860, when the costs were taxed and paid the same day. The court held that the plaintiff was guilty of no laches in not sooner paying the costs, and this question was ruled his favour.

The other two points, viz., the 2d and 3d, presented by defendants' counsel and reserved, raised but one question, and were considered together by the court, viz., whether the plaintiff's lien was lost by lapse of time?

The claim was filed in January 1851. It was tried in 1852, and a new trial granted. It was on the list in 1853 and 1854 and 1860, and continued once at least, if not oftener, by consent. But in regard to the matter of consent, there was some controversy.

The scire facias was issued the next day after the claim was filed, and tried the first time within one year thereafter, and a new trial granted on terms as above stated. These conditions were not all complied with till June 1860. The court held that "although the plaintiff was not bound to wait until the defendant might choose to file his bill of costs, yet if he thought proper to do so, the defendants could not claim any advantage from this delay; that it was difficult to perceive, on principle, why the plaintiff should be barred from a recovery merely by lapse of time. It was in the power of the defendants at any time to have ordered

this case on the trial list and have it disposed of, and in the absence of all allegations that they sustained any injury by the delay, they should not be allowed to set that up in bar of this action.

The learned judge, therefore, directed the entry of judgment in favour of plaintiff; which was the error assigned here by the defendant.

*George F. Gilmore,* for plaintiff in error.

*Robb & MacConnell* (with whom were *R. & S. Woods*), for defendant.

The opinion of the court was delivered, by

WOODWARD, J.—The first trial of this cause resulted, on the 26th January 1852, in a verdict for the defendants below, now plaintiffs in error. On the 7th July 1852, the District Court, in which the trial and verdict occurred, set aside the verdict, and granted a new trial "upon condition that plaintiff pay the costs of the term, the docket costs, defendant's bill to be taxed by the prothonotary, and that plaintiff, within reasonable time, file of record in this case a specification of the amount or just balance of the claim alleged to be due from defendants."

. These were in the nature of conditions precedent, and it is a general principle that where the vesting of an estate, or the attaching of any right, depends on a condition precedent, the condition must happen or be performed before the estate or right can be enjoyed, and if performance lie wholly in the will of the grantee, and no time be fixed for it, the law gives him a reasonable time within which to perform. This rule was expressed in respect of one of the conditions, and it is to be implied in respect of the others. Without performance of the conditions prescribed, there was no new trial, and no performance was available that was not made within reasonable time. Especially was it the duty of a party who had thrown himself upon the discretion of the Court for deliverance from an adverse verdict, to be prompt and eager in the performance of every condition on which the court had suspended his relief.

Yet it was not until the 11th June 1860—near eight years from the date of the condition—that the costs were paid. If the plaintiff's bill were not filed, the record costs could have been paid at any time. But in point of fact, the plaintiffs' bill was filed on the 14th July 1852, and if not taxed by the prothonotary, it was the fault of the plaintiff, for as he was the party to except to the bill, it was his duty to secure a hearing for his exceptions. And though there was an attempt to comply with the other condition respecting a specification of claim, the paper

[Ward *v.* Patterson.]

filed 16th July 1852, claimed nearly double the sum that was recovered eleven years afterwards, and was withal so imperfect an exhibition of the plaintiff's claim, that when the cause came on for trial in January 1863, the court had to make another order for a more specific statement.

We consider all this delay unreasonable. The inaction of the plaintiff imported rather an intention to abandon his new trial than to prosecute it, and the motion of the defendants, in September 1861, to rescind it ought to have been granted. Where the delay consists in not moving a cause to trial, it is chargeable alike to both parties, and therefore neither can impute laches to the other, but here the first steps belonged to the plaintiff to take. The defendants could do nothing to speed a trial until the plaintiff performed the conditions he had been placed under, and failing to perform them in a reasonable time, he lost his right to a new trial.

But not only was the delay fatal to his right of new trial, but also to his lien, to enforce which was the object of the action. The 24th section of the Mechanics' Lien Law limits liens to five years, unless revived by *scire facias*, and although the issuing of a *scire facias* within the five years is sufficient to keep the lien alive, yet such *scire facias* must be "duly prosecuted." These are the very words used in the Act of 1834, in regard to liens of decedent's debts, and from what has been said above, it is apparent the *scire facias* in this case was not duly prosecuted. The lien was filed in 1851, tried and defeated in 1852; a new trial granted on conditions, which were not performed fully until 1863. If the payment of costs in 1860 be regarded as full performance, that was a delay of near eight years, and was not due prosecution. The lien, therefore, as well as the right to a new trial were gone.

It would be an intolerable practice to let a lien lie so long, apparently dead and abandoned, and then after witnesses, books, and papers were scattered, to start it into new life, and enforce it against parties who could not be expected to retain the means of defence.

> The judgment is reversed, and the overruling of the motion of defendants' counsel of September 28th 1861, is set aside, and said motion is granted, and judgment is here entered for defendants in pursuance thereof.