## Eilenberger v. Delaware, Lackawanna & Western Railroad Co.

*Practice, C. P.—Laches—Trial nine years after issue—Non pros.—Statute of limitations—Discretion of court.*

1. Where there are wrongs to be redressed, they should be redressed without unreasonable delay, and where there are rights to be enforced, they should be enforced without unreasonable delay. Where there is unreasonable delay in enforcing rights and redressing wrongs, such delay constitutes laches, and laches operates as a bar to further prosecution, both in law and in equity.

2. If it is against public policy (as it is, judging from legislative enactments) to permit trespass suits to be begun more than six years after the cause of action arose, it is equally against public policy to permit trespass suits to be tried more than six years after the suits are started, unless the delay is satisfactorily explained.

3. The courts have the same power to order a compulsory non-suit for delay in prosecuting the case as they have to make a general rule fixing the time when judgment of *non pros.* may be entered on defendant's præcipe for want of a declaration. In the exercise of its power in the premises, the court's discretion should be to some extent guided by considerations of analogy derived from the statutes of limitation. The sufficiency of plaintiff's excuse for delay in prosecuting suit is within the power and discretion of the court.

4. Where a summons in trespass was served upon defendant in July, 1915, and statement of claim filed by plaintiff on July 15, 1915, and thereafter no steps were taken to bring the case to trial, a judgment *non pros.* was entered May 19, 1924, because of plaintiff's laches.

Rule for *non pros.* C. P. Lackawanna Co., Oct. T., 1915, No. 617.

*J. E. Sickler*, for plaintiff; *D. R. Reese* and *G. W. Morgan*, for defendant.

MAXEY, J.—This is a petition of the defendant to enter judgment of *non pros.* because of the laches of the plaintiff. The cause of action arose in October, 1913. Summons was served on the defendant in July, 1915, and statement of claim was filed by the plaintiff on July 15, 1915. It is alleged that the plaintiff has failed to take the necessary steps to bring this case to trial in the time required by the practice of this court, for a period of more than ten years since the alleged damage occurred, and that the interests of the defendant have in the meantime been greatly prejudiced. Plaintiff in her answer denies that the interests of the defendant have been greatly prejudiced or prejudiced at all by the delay in bringing this case to trial, and declares that

the cause of damage complained of by the plaintiff can be seen now, as well as at the time of the bringing of the suit or at any time since. Plaintiff also says that there is no rule of court requiring a case to be tried within ten years from the damage complained of; that the defendant could have placed the case on the trial list at any time as well as she could; that this suit was brought in good faith, and that she has never intended to abandon it, but desires to have the same tried at the earliest date practicable.

The delay in the case at bar has been ten years and there is no explanation offered by the plaintiff for her failure to order the case to trial. It is true that she does set forth that the defendant, as well as the plaintiff, could have placed the case on the trial list; but counsel for the plaintiff well knows that it is not the practice, and it is obviously not to the interests of counsel for the defendant to order a case on trial. It is reasonable to expect that the person who brings the action will expedite the action to a trial, and it is unreasonable to expect that the person against whom the action is tried will be eager to incur the expense of having the same tried. Many actions that are begun are never brought to trial, and defendants have a right to rely upon the knowledge of this fact. We do not believe that the duty of ordering a damage suit to trial rests as much upon the defendant as upon the plaintiff. A defendant has a right to act upon the adage: "Let sleeping dogs lie." "It is no reply to say that the defendant may compel the plaintiff to declare his cause of action. It is not his duty to do so, but it is the plaintiff's duty to proceed with the case within a reasonable time. He is the actor and must act or fail of his action:" Waring Bros. *v.* Pa. R. R. Co., 176 Pa. 172, 178.

Plaintiff's counsel avers in his brief that "the court will bear in mind that since this suit was brought we have been through the World War and our court-house has been remodeled. Both of these events tended to delay litigation very much." This last statement is incorrect. There were a few cases delayed because of witnesses being in the war, but there is no evidence that the case at bar was one of them. Furthermore, there have been twenty-eight terms of Common Pleas Court since the Armistice. We know of no long delays of litigation because of the court-house being remodeled. The court functioned (except for one or two weeks' term) as usual during the alterations of the court-house. Trials were conducted in the Federal court-room and also in the temporary court-room provided in the County Bank Building. There have been nine terms of Common Pleas Court since the court-house remodeling was completed.

It has always been the policy of the law to expedite litigation and not to encourage long delays. From this fact arose the various statutes of limitation. The reasons why the law is unfavorable to delayed litigation are self-evident. If any person has a right which he wishes enforced, he should enforce it promptly. The person against whom the right is to be enforced might be greatly prejudiced by plaintiff's delay. Witnesses disappear or remove to distant parts and the entire aspect of the parties on both sides may change with the lapse of time. As Justice Green said in Waring Bros. *v.* Pa. R. R. Co., 176 Pa. 172, 176: "The practice of the courts in compelling plaintiffs to proceed with their causes without unreasonable delay originated in the common law before the passage of any statute, and the Statute of 13 Charles II., § 9, ch. 2, par. 3, limiting the time within which a declaration might be filed to one year, only added legislative sanction to the already existing power of the court."

Justice Green also quotes what Chief Justice Black says in Huffman's Heirs *v.* Stiger, 1 Pitts. 185: "These facts raise the question whether a suit, of

which no notice has been taken by either party for twenty-seven years, can be revived by one of them after that time. We are clear it cannot without violating all the analogies of the law and giving to a false claim every advantage which it is the object of the limitations and presumptions to take from it. An unjust demand, if prosecuted while it is fresh, may easily be defeated by counter-proof. But the witnesses may die or the papers be lost in a few years. . . . No honest man would be willing to live in a country where the law would require him to prove the actual falsehood and injustice of every stale claim which malice or cupidity might dig up against him. Hence, we have statutes of limitation, and in cases to which they do not apply, we have presumptions which are equally strong. But where is the use of these wholesome regulations if a man may bring suit, suffer it to lie a quarter of a century and then revive it with the same effect as if it had been prosecuted with diligence from the beginning. It cannot be done. When neither party makes any move in the suit for a long time, there is a natural, and should be a legal, presumption that the dispute has been settled to the satisfaction of both. What precise length of time is required to make this presumption full and complete it is not now necessary to decide. Certainly it is less than twenty-seven years."

Justice Green further says: "In Ward v. Patterson, 46 Pa. 372, we held to the same rulings and decided that where a new trial had been granted and the plaintiff failed to move the cause to trial for nine years, he lost his right to a new trial and also lost his lien under the mechanics' lien law. . . .

"We decide this case upon the undoubted power of the court below to make the rule of practice relating to this subject, and upon the necessarily implied power to grant the same relief upon motion and hearing, which the defendant could have had by the mere act of its counsel in directing the prothonotary to enter a *non pros.* at any time after three months, and also upon the further consideration that in any event, and in the best aspect of the case for the plaintiff, the matter was within the discretion of the learned court below, and in the exercise of that discretion, the decision was against the plaintiffs."

Forrest v. Phila. R. T. Co., 261 Pa. 383, 389, Mestrezat, J.: "Promptness by both parties in asserting their legal rights is expected and should be required. If at any time the defendant company thought the action had been abandoned, it should have pursued the established practice and moved the court or taken a rule to abate it. . . ."

That is what the defendant company did in the case at bar. In the case Justice Mestrezat referred to, the defendant company waited until the case was listed for trial and was being heard by the court on its merits, and then the defendant objected to the substituted plaintiff offering in evidence the letters of administration granted her, on the ground that it was too late to maintain the action; in other words, that the suit was abated by undue delay in its prosecution. There is nothing in Justice Mestrezat's opinion which sustains the position of the plaintiff in the case at bar, for here the defendant followed the usual practice in moving the court for judgment of *non pros.*

We think that the long delay of the plaintiff in this case brings the case within the spirit of the rules embodied in the various statutes of limitation. The legislature of the Commonwealth has by proper enactment given expression to the feeling of mankind as to when actions to redress wrongs should be brought.

The Act of March 27, 1713, § 1, 1 Sm. Laws, 76, provides that all actions of trespass *quare clausum fregit*, all actions of detinue, trover and replevin, all actions upon account and upon the case, all actions of debt for arrearages of rent, all actions of trespass and assault, menace, battery, wounding and

Eilenberger *v.* Delaware, Lackawanna & Western Railroad Co.

imprisonment shall be brought within six years after the cause of such action or suit and not after. Section 2 of the same act provides that, if in any of the said actions or suits judgment be given for the plaintiff and the same be reversed by error, or a verdict passed for the plaintiff, and upon matter alleged in arrest of judgment, the judgment be given against the plaintiff, that he take nothing by his writ, then, and in such case, the party plaintiff may commence a new action or suit from time to time within a year after such judgment reversed or given against the plaintiff, and not after.

The Act of June 24, 1895, § 2, P. L. 236, provides that "every suit hereafter brought to recover damages for injury wrongfully done to the person, in case where the injury does not result in death, must be brought within two years from the time when the injury was done and not afterwards."

The Act of March 28, 1867, P. L. 48, provides that "no suit, at law or in equity, shall be brought or maintained against any stockholder or director in any corporation or association to charge him with any claims for materials or moneys for which such corporation or association could be sued, or with any neglect of duty, as such stockholder or director, except within six years after the delivery of the materials or merchandise, or the lending to or deposit of money with said corporation or association, or the commission of such act of negligence by such stockholder or director."

The Act of May 23, 1891, § 1, P. L. 109, provides that "petitions for the assessment of damages for the opening or widening of any street, road or highway, when the damages are not assessed by the view opening the road, may be filed in the Court of Quarter Sessions within the period of six years from the confirmation of a report or the entry of a decree opening the said street, road or highway, or within six years from the date of notice of the intended opening of the same, under an ordinance or resolution duly passed, but not thereafter."

These and other legislative enactments that might be cited are expressive of the feeling of mankind that where there are wrongs to be redressed, they should be redressed without unreasonable delay, and where there are rights to be enforced, they should be enforced without unreasonable delay. It is true that in the case at bar the plaintiff caused a summons to be issued and filed a statement of claim, but for about nine years she did nothing to enforce her right or to redress the wrong complained of. Technically, she is not barred by any statute of limitations, as she actually began her suit within the statutory period, but under the practice of the court barring actions unless they are prosecuted to trial within a period corresponding to the statute of limitations appropriate to the nature of the case, the present action is barred.

In the case of Berghauser *v.* Bernhardt, 8 Lacka. Jurist, 22, this court formulated the following statement of the law as to judgment of *non pros.* for laches: "The courts have the same power to order a compulsory non-suit for delay in prosecuting the case as they have to make a general rule fixing the time when judgment of *non pros.* may be entered on defendant's præcipe for want of a declaration; presumption, either of settlement out of court or abandonment of the action, arises from the lapse of many years of inaction on plaintiff's part unaccounted for; what precise length of time will make this presumption conclusive is not determined, but, in the absence of any statutory provision or court rule on the subject, must depend on the facts of each case. In the exercise of its power in the premises, the court's discretion should be, to some extent, guided by consideration of analogy derived from statutes of limitation; and where no facts nor inference of fact are in dispute, the sufficiency of plaintiff's excuse for delay is for the court."

Eilenberger *v.* Delaware, Lackawanna & Western Railroad Co.

"The time necessary to raise a presumption which acts on an interest in land has been eventually reduced to the standard of the statute of limitation:" Orr *v.* Cunningham, 4 W. & S. 294, Gibson, C. J.

We think that the long delay of the plaintiff in this case brings the case within the spirit of the rules embodied in the various statutes of limitations. While there is no rule of law and no rule of court preventing the trial of plaintiff's case, we feel that the laches of which plaintiff has been guilty does not entitle her at this late day to put the defendant to the necessity of defending the cause of action.

2 Bouvier's Law Dictionary, 1820: "Laches: Unreasonable delay; neglect to do a thing or to seek to enforce a right at the proper time. The neglect to do what in law should have been done, for an unreasonable and unexplained length of time and under circumstances permitting diligence: 21 S. E. Repr. (S. C.) 277. Unlike the limitation, it is not a mere matter of time, but principally a question of the inequity of permitting the claim to be enforced; an inequity founded upon some change in the condition or relation of the property of the parties: 10 U. S. App. 227; 145 U. S. 368."

21 Corpus Juris, 210: "Laches, in a general sense, is the neglect, for an unreasonable and unexplained length of time, under circumstances permitting diligence, to do what in law should have been done. More specifically, it is inexcusable delay in asserting a right; an implied waiver arising from knowledge of existing conditions and acquiescence in them; such neglect to assert a right as, taken in conjunction with lapse of time more or less great, and other circumstances causing prejudice to an adverse party, operates as a bar in a court of equity; such delay in enforcing one's rights as works disadvantage to another."

There is no reason why laches should not operate as a bar in law as well as in equity.

"The law's delay" has long been a favorite theme of critics of the courts, and the courts should be slow to encourage any practice which fosters this source of criticism. Delayed justice is properly regarded as injustice. We have long had a rule requiring a statement to be filed not less than one year after the case is started, and this is at least a strong intimation to any person starting a lawsuit that the court expects him or her to bring a case to an issue and to trial within a reasonable period. Certainly, no plaintiff has a right to assume that he or she can dally nine years with a case without any action whatsoever and then find the opposing party as ready for trial as he would have been seven or eight years before. It is the established practice of this court to require, when asked to do so, that a case shall be tried with reasonable promptness or suffer being *non prossed*. If this court establishes the precedent of permitting cases to be tried after they have been allowed to slumber for nine or ten years, with no one having sufficient interest in them to wake them up and have them disposed of, we may expect to find the trial lists of the future cluttered with old cases that can be disposed of only with an approximation to justice, because many of the witnesses may be inaccessible and the accessible witnesses will have only faded recollections of the matters in controversy.

It imposes no hardship on those who institute trespass suits to understand that they must bring their cases to trial within at least six years after the action is started (in analogy to the statute of limitations in such cases), or adequately explain the reason why the cases have not been brought to trial, or suffer judgment of *non pros*. If it is against public policy (as it apparently is, judging from legislative enactments) to permit trespass suits to be

begun more than six years after the cause of action arose, it is equally against public policy to permit trespass suits to be tried more than six years after the suits were started, unless the delay is satisfactorily explained. There is no such explanation in the case at bar.

Therefore, now, to wit, May 19, 1924, judgment of *non pros.* is entered.

From William A. Wilcox, Scranton, Pa.